Good morning, Your Honors. May it please the Court. My name is Susan Ferguson. I'm here to represent the appellant, and this is my first time before you, and I consider it an honor to be here. And we're here for two reasons today. The first is that trial counsel failed to secure the testimony of an exculpatory witness who would have exonerated the appellant. He failed to interview, locate, and call Antonio Montano. And the only reason my appellant is still in prison today is because the government not only failed to indict Montano in the first place, but they failed to ask for remand after Montano came forward and confessed to DEA agents, showed up in court twice, and signed a plea agreement admitting his involvement. Had the government asked for remand, appellant would be – would have benefited from the plea agreement that Montano signed, which reduced appellant's sentence by 50 percent. It could be said just as well that we're here because Mr. Montano didn't show up when it came time to change – to enter the plea. That's true, Your Honor, but I do think it's awfully suspicious that an illegal immigrant who confessed to involvement in a 16-pound methamphetamine deal was never – was let go, and the government never asked for remand. In any event, I agree that the appellant does have an obligation to make some attempt to notify her attorney of any exculpatory witnesses that may help her case, or at least not to hide an exculpatory witness. But we know by Martina's own admission that appellant brought him forward physically to the office – to Martina's office at least once, and that he did nothing. And there's no evidence to suggest she was hiding Montano. In fact, she testified at trial even that Antonio was living with her not only at the time of the incident, but at the time when she was giving her testimony, which contradicts Martina's, who said that he tried to locate Montano, but the appellant said that she didn't know where he was, that he was going back and forth from Mexico and maybe staying at some cousin's house. I don't understand why – The judge found that his testimony was more believable than her testimony. Yes. Judge Shebb did find that. So what do we do about that? I think it's clearly erroneous. He submitted two declarations which contradicted each other, and then in his testimony at the evidentiary hearing, he gave an entirely different version. Now, his first declaration in the motion for new trial, he said that he had no idea where Montano was or what he would say if called to testify. In his second declaration, which was in opposition to the 2255 motion, he said it was the appellant's decision not to have Montano testify, and that based on that decision, it was – he decided not to try to locate, subpoena, or interview Montano. And then when he came into the evidentiary hearing, he recanted that and said, well, he did try to locate Montano at some point, but he couldn't be found. So I just think that the finding that Martina's is – Well, let's – I think we need to focus on your client's actions, and the government points in particular and says the reason that we can't say that the district court was clearly erroneous here is that if we accept your client's scenario, it's inconsistent with what actually happened when she came to Lawyer No. 2, whose name I'm – Griffin, there we go. She has Lawyer No. 2, Griffin. Now, if it were the case that Lawyer No. 1, Martinez, had screwed up by not bringing in Montano the first time, it's logical to believe that's what your client tells Griffin, that my first lawyer screwed up, and this is the guy you've got to have testified. But she didn't. And Griffin doesn't say that she did that. And what she apparently did was make some vague comments and then refer Griffin to the first lawyer, who's the guy who's supposed to have screwed up. Now, it seems to me implausible to think that it happened the way your client now says if, in fact, she didn't tell Griffin that my lawyer screwed up. Why does she tell Griffin to go talk to my lawyer to find out what happened? Well, she – what – the way that Griffin testified is what she did say was talk to Martinez. He knows about this witness who will come forward and exonerate him. That's my problem. Because if what she thinks happened is that Martinez, the first lawyer, screwed her by not calling Montano, then why does she tell Griffin go talk to the first lawyer? Why doesn't she say my first lawyer screwed up? Well, I think if there was any miscommunication, it was between Griffin and the appellant, because the appellant speaks Spanish and she has about a second-grade level education. So I think there may have been some miscommunication there, and Griffin testified that he – he relied on Martinez. Well, does your client testify or have a declaration saying I told Griffin that Martinez screwed up? And I don't think she does. So that suggests that it wasn't that she said that and Griffin didn't understand it. I don't think she said that she said that. And it just seems to me if she's counting on her boyfriend coming in and testifying and her lawyer doesn't call the boyfriend in, she's going to be mad at the lawyer and will say that to lawyer number two. But that's not what happened. So that's the problem I have. That's why I concede Martinez's story doesn't hang together real well. It does seem to change under the circumstances. But on this most fundamental point, I'm not sure that your client's story hangs together very well either. Well, I would submit that if there was any miscommunication, it was between appellant and Griffin, and it is due to her level of education and the language barrier. And she doesn't know what the legal issues would be or what's going to be important. She relies on her attorneys to decide that. Well, she would know that Mr. Montana's evidence would be highly important because it was exculpatory of her. Correct. And that was what she had told Griffin, was that there was a witness who was available who could testify to exonerate her. So why didn't she bring the witness in? Why didn't she take any steps to get her boyfriend to come testify? Well, she brought him to Martinez. Once. And at that time, apparently it was indicated that Tano was voluntarily going to talk to the government, and he did. Well, she brought him in once, if you believe Martinez. According to her, she had brought him in more times. But isn't once enough? Doesn't Martinez have an obligation to at least talk to him, to assess his credibility, to get his contact information? Something. Even if you believe Martinez, it seems like he should have done something to secure the testimony of Montana. So I think that once is enough, and I think that if it was the appellant's duty to take substantial efforts to locate and call witnesses, then the constitutional right to effective assistance of counsel would be meaningless. And the finding that appellant did not make substantial efforts to bring Montana forward is troubling because this is the same judge who denied appellant's motion for new trial based on Antonio's statements on the grounds that Martinez didn't exercise due diligence. And this is, you know, a factual finding. So that's troubling. Do you want to reserve a couple of minutes, or would you like to use them? Okay. Thank you very much, Ms. Ferguson. May it please the Court. My name is Lawrence Brown. I represent the United States in this matter. This is a case of a defendant who was let down by her boyfriend, not by her trial counsel. As I think the record demonstrates amply at the evidentiary hearing for the 2255 motion, there are conflicting accounts as to the circumstances as to why Antonio Montano, the defendant's boyfriend, did not appear and testify at her particular trial. Let's take Martinez. The lawyer's testimony is true the way Judge Shub did. Yes. Do I understand correctly Martinez testified the reason he didn't interview Montano was because he didn't want to make himself a witness in the case? I don't know if he made that exact representation. Certainly that would be something I think any lawyer would certainly have in their mind if he had a third party present. I mean, if someone brings in a witness who's going to completely exculpate the client, he wouldn't take a statement. He'd let the crucial witness leave the office rather than make himself a witness? I mean, the worst that happens is he's a witness, then you get another lawyer and he becomes a witness. How did you let the crucial witness leave the office? Well, I think that when you bear in mind that this purported crucial witness is the defendant's boyfriend, and Mr. Martinez later testifies that he had a good sense as to what generally Mr. Montano would have testified to, namely that it was his drugs, not hers, she wasn't involved in the transaction. Is it true she walks? No. That's the other irony of this matter is he was not physically present during the drug transaction that occurred at the El Torito parking lot in August of 1998 in Sacramento, California. She was present. And we had a co-conspirator who then cooperated and testified, and the jury found that testimony to be credible, that as a matter of fact, when she got off the phone with Mr. Montano at her home, when he couldn't hook up with the person who was going to help with the drug deal, that she said, excuse me, she said, I'll take care of it. So she then rides in the car that has the drugs in it to El Torito. When they get to the parking lot, she instructs where the car should be driven to. And that's the rendezvous point with the other co-conspirators who are going to be involved in the drug deal. So even if Mr. Montano were to come forward and say, well, the drugs that were in the tire of the Oldsmobile in which my girlfriend was riding were my drugs, she still participated in a criminal way in carrying out this drug transaction. According to that version. I'm sorry? According to that version. The version is she was just, she needed a lift to go be dropped off somewhere. Precisely. And the jury rejected. That's right. They rejected it because they didn't hear Montano. But see, Montano would not have disputed those particular facts. Let me ask you this. Most of what Montano could have said was that those are my drugs. Martinez says, it comes time for trial. I tried to find this guy. I couldn't find him. Why, he never hired an investigator to go look for him. What do we do about that? Well, I think, again, it would be to what end. This was not a stranger to the defendant. This was her boyfriend. And at least according to the defendant, it was a live-in boyfriend. And Ms. Martinez says, I was never told that particular fact. Granted, but he can't find him. I think this case is a marvelous reason why you have the rule of having high levels of And it's only for clearly erroneous findings that these types of findings were overturned. Well, that's what I'm saying. That's why I started off by saying accepting his story is true. He says, I can't find the guy. Right. My question to you is, well, why doesn't that then give him some duty to hire an investigator to go look for him? Well, I think as he testified at the hearing, his justification, and this was satisfactory to Judge Shubb that he did demonstrate adequate diligence and was reasonable in his performance, was namely, where would the investigator go? Well, the only person who had contact with Mr. Montano in our region appeared to have been Ms. Vidalas, the defendant, and it appears to be her family as well. And the most information they have is that he had a tendency to go back and forth to Mexico and then back up to the Stockton area. So what would the investigator do? I'm used to a little more vigorous investigators than you are maybe. But, I mean, just because the lady says, I don't know where he is, that doesn't mean the investigator says, okay, throw my hands up. That's the end of it. I mean, the investigator would go out and try to find him, you know, put some shoe leather out and go hit the streets and see if he can find where this guy is. My suspicion would be in part that Mr. Martinez knew that there wasn't a whole lot that Mr. Montano was going to be able to do for his case ultimately because if Mr. Montano was to come into court, he would have to implicate himself that these were his drugs. There would be a Fifth Amendment violation immediately, and the court would instruct him that you're going to be incriminating yourself under the Fifth Amendment. So I think Mr. Martinez said it was unlikely that there's going to be testimony of any nature. He could take the stand, take the Fifth in front of the jury, and that might help the client. Well, again. At least at one point in time he was apparently willing to do it. I mean, he signed the plea agreement. He didn't show when it came time to perform, but he did sign it, and that's with counsel. So he was in a context where at least one point in time he did appear prepared to testify. So you can't rule out the possibility he might actually have shown up. Well, he certainly came in after the fact. You know, it was 13, 14 months after the arrest. It was a month after she had been convicted at trial. Then this hero comes forward to provide his statement. And the notion that if he had had a subpoena, for example, that he would have shown up because he now has a subpoena by an investigator. I mean, he wouldn't be in shackles being detained prior to trial. It would just be a subpoena document. This is the same man after he debriefs and gives his statement and says he's going to enter a change of plea so that his girlfriend could get a 50 percent reduction on the sentence. He flees. He's still a fugitive today. So the notion that even if they had found him and they had subpoenaed him, that Mr. Montano would have done anything different is highly unlikely. There's also a significant question as to what role did Ms. Vidalas have in the absence of Mr. Montano. As to what he said. Had she been sentenced at the time that he came in and gave his guilty plea? No, Your Honor. She had not been sentenced at that. When he came to brief at the DEA, it would have been in August of 1999, and she had been convicted a month prior. So I don't believe that she was sentenced at that time yet. So he could have been hopeful that that alone would have reduced her sentence, his plea alone. Oh, absolutely. I don't mean to suggest that he doesn't understand the idea that were he to cooperate and provide information that there could be a benefit that inures to his girlfriend. But when it came down to it, he wasn't willing to take those steps. That's why when I started my remarks, I don't mean to be really to be flippant, but the blame is not at the feet of Mr. Martinez. The blame is at the feet of Mr. Montano, her boyfriend. She hooked up with a bad guy. The record was clear at the trial that when he was not able to help carry out the drug transaction, she was put into play. I'll take care of it, and then she executed the steps to have the drug deal occur. This is not part of this particular appeal, because this is an effective assistance and conflict appeal. But I'm curious as to whether the district court did, in fact, take into account his statement made to the DEA at the time of her sentencing. I didn't handle the matter, so I would be speculating. Maybe counsel comments on it. My assumption would be he wouldn't have had that before him in any meaningful way for the sentencing that she received at the time. It seems it would be part of a PSR, though, because it's a statement of a co-conspirator. I apologize. I hadn't focused in that particular area. If I might just touch briefly on the other basis for the ineffective assistance of counsel claim, which is that there was an alleged conflict of interest. One needs to believe, then, that Mr. Martinez at some point turned to Mr. Montano, who may be his star witness to exculpate his client or to reduce her culpability, and said, I'd recommend you flee. And suddenly he has a higher loyalty to Mr. Montano than he does to his own client. This is the sort of testimony from Ms. Vidalis that Judge Shrupp would have had to have believed, in order to sustain the finding, that there was a conflict of interest, such to trigger ineffective assistance of counsel. So what the court had in front of them were conflicting accounts and maybe less than perfect efforts by Mr. Martinez. But when you look at who the person was, whether or not they would have been even with respect to the subpoena, then Mr. Martinez's actions start to come into focus as more reasonable. This was her boyfriend who was going to come in and testify. If there's no further questions, I'll sit back. Thank you very much. Thank you, Your Honors. Ms. Ferguson. Yes. I'd just like to point out that when Montano did come in and confessed to DEA agents, he had no guarantee that he was going to get a deal at that time. So based on that, I would submit that that's the same situation he would have been in had he come in and testified at trial. He wouldn't have – he had no guarantee he was going to get a deal. And again, the appellant would have benefited if the government had asked for a remand. So I think to blame this solely on Montano because he fled is misplaced. They could have easily asked for a remand twice when he was in court. I don't know what you mean by asked for a remand. I'm not clear what you mean by that. They didn't ask that he be held in custody, which usually they do when you have an illegal immigrant who has confessed to a 16-pound methamphetamine deal. So it's odd to me that twice he was in court in front of the judge and they didn't ask for remand. And usually illegal immigrants oftentimes don't get bail. So she would be out of prison today had that not happened. And also another thing Martinez could have done when Montano did physically go to his office is simply ask for contact information so he could find him in the future. Why was he relying on the appellant to continually bring him in? So that's something basic that he could have done. So I think even if you believe him, he hasn't done what the Constitution requires him to do. Submitted. Roberts. Thank you very much. Thank you both. Counsel. The case was argued and submitted. We'll stand at recess for this session. Thank you. Thank you.
judges: Thomas, Silverman, Clifton